**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM G. OSBORNE,
        *Plaintiff-Appellant,*

    v.

DISTRICT ATTORNEY'S
OFFICE FOR THE THIRD JUDICIAL
DISTRICT; SUSAN A. PARKES;
ANCHORAGE POLICE DEPARTMENT;
WALT MONEGAN,
        *Defendants-Appellees.*

No. 04-35126

D.C. No.
CV-03-00118-A-
RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted
July 14, 2005—Anchorage, Alaska

Filed September 8, 2005

Before: Alfred T. Goodwin, Melvin Brunetti, and
William A. Fletcher, Circuit Judges.

Opinion by Judge Brunetti

12659

**COUNSEL**

Robert C. Bundy, Dorsey & Whitney LLP, and Randall S. Cavanaugh, Kalamarides & Lambert, Anchorage, Alaska, for Appellant.

Nancy R. Simel, Assistant Attorney General, Anchorage, Alaska, for Appellee.

**OPINION**

BRUNETTI, Circuit Judge:

William Osborne, an Alaska prisoner, appeals the district court's dismissal of his action, brought under 42 U.S.C. § 1983, to compel the State to release certain biological evidence that was used to convict him in 1994 of kidnapping and sexual assault. Osborne, who maintains his factual innocence, hopes to subject the evidence, at his expense, to more sophisticated DNA analysis than was available at the time of his trial. He alleges that by refusing him post-conviction access to the evidence, the State has violated his constitutional rights under the First, Sixth, Eighth, and Fourteenth Amendments.

Without reaching the question of whether there exists a constitutional right of post-conviction access to DNA evidence, the district court dismissed Osborne's action for failure to state a claim. It ruled that because Osborne seeks to "set the stage" for an attack on his underlying conviction, his § 1983 action is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and thus a petition for habeas corpus is his sole remedy. On appeal, Osborne argues that the district court applied a more restrictive standard than that enunciated in *Heck*, and submits that success on the merits of his § 1983 claim would not "necessarily imply" the invalidity of his state court conviction. We agree, and accordingly reverse the judgment of the district court and remand for further proceedings.

## BACKGROUND

Following a March 1994 jury trial in Alaska Superior Court, Osborne was convicted of kidnapping, assault, and sexual assault, and was sentenced to 26 years' imprisonment. The charges arose from a March 1993 incident in which the victim, a prostitute named K.G., after agreeing to perform fellatio on two clients, was driven to a secluded area of Anchor-

age, raped at gunpoint, beaten with an axe handle, and shot and left for dead.

K.G. later identified, from photo lineups, Osborne and Dexter Jackson as her assailants. At their joint trial, abundant physical evidence linked Jackson to the crime scene. Specifically, K.G. identified Jackson's car as the one in which the assault took place, and tire tracks at the scene matched those made by Jackson's car. K.G. also identified a pocketknife found in Jackson's car as hers, and ballistics tied a spent shell casing found at the crime scene to a pistol found in Jackson's car. By contrast, aside from K.G.'s (and Jackson's) identification of Osborne as the second assailant, the State tied Osborne to the assault based primarily on its analysis of biological evidence recovered from the crime scene—namely, a used condom, two hairs, and certain bloodied and semen-stained clothing.

The State subjected the sperm found in the used condom to "DQ Alpha" testing, an early form of DNA testing that, like ABO blood typing, reveals the alleles present at a single genetic locus. The results showed that the sperm had the same DQ Alpha type as Osborne; however, this DQ Alpha type is shared by 14.7 to 16 percent of African Americans, and can thus be expected in one of every 6 or 7 black men. The State also recovered two hairs from the crime scene: one from the used condom, and another from K.G.'s sweatshirt. DQ Alpha typing of these hairs was unsuccessful, likely because the samples were too small for analysis. Both, however, were "negroid" pubic hairs with the "same microscopic features" as Osborne's pubic hair. Tests performed on K.G.'s clothing were inconclusive.

This evidence was submitted to the jury, which rejected Osborne's defense of mistaken identity and convicted him of kidnapping, first-degree assault, and two counts of first-degree sexual assault. His convictions were affirmed on direct appeal. *Jackson v. State*, No. A-5276, at 6 (Alaska Ct. App.

1996) (unpublished decision). With his application for state post-conviction relief still pending in the Alaska courts, *Osborne v. State*, 110 P.3d 986 (Alaska Ct. App. 2005), Osborne filed the instant § 1983 claim. His complaint alleges that the District Attorney's Office, District Attorney Susan Parkes, the Anchorage Police Department, and Police Chief Walt Monegan (collectively, the "State") violated his federal constitutional rights by denying him access to this evidence. As relief, he seeks only "the release of the biological evidence" and "the transfer of such evidence for DNA testing."

Osborne intends to subject the evidence, at his expense, to two forms of DNA testing: Short Tandem Repeat ("STR") analysis and Mitochondrial DNA ("mtDNA") analysis. Unlike the DQ Alpha analysis presented at trial, which looks to only one genetic locus, STR analysis examines the alleles at 13 genetic loci. It thus has the power to produce a far more specific genetic profile—one shared by one in a billion people, rather than one in 6 or 7. Moreover, if the hairs prove unsuitable for STR analysis, Osborne intends to submit them to mtDNA analysis, which, unlike STR analysis, is capable of reaching a result on hair samples without intact roots or follicles. Osborne asserts that neither STR nor mtDNA analysis was available at the time of his trial.

The magistrate judge recommended dismissing Osborne's § 1983 action, finding that because he seeks to "set the stage" for an attack on his underlying conviction, under *Heck* a petition for habeas corpus is his sole remedy. The district court accepted and adopted this recommendation, and dismissed the action.

## STANDARD OF REVIEW

We review *de novo* a dismissal for failure to state a claim pursuant to Rule 12(b)(6), *Decker v. Advantage Fund Ltd.*, 362 F.3d 593, 595-96 (9th Cir. 2004), and will not affirm unless it appears beyond doubt that the plaintiff can prove no

set of facts in support of the claims that would entitle him to relief, *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003).

## DISCUSSION

**[1]** This case requires us to consider, once again, " 'the extent to which § 1983 is a permissible alternative to the traditional remedy of habeas corpus.' " *Docken v. Chase*, 393 F.3d 1024, 1027 (9th Cir. 2004) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). As the Supreme Court has recognized, state prisoners have two potential avenues to remedy violations of their federal constitutional rights: a habeas petition under 28 U.S.C. § 2254, and a civil suit under 42 U.S.C. § 1983. *Heck*, 512 U.S. at 480. Of course, while a habeas petition may ultimately secure release, habeas relief is often barred by procedural hurdles. By contrast, a § 1983 suit will not result in release, but is generally not barred by a failure to exhaust state remedies. *Id.* at 480-81.

### A.   *Preiser, Heck, and their Progeny*

**[2]** The Court, like this circuit, has attempted to "harmoniz[e] the broad language of § 1983, a general statute, with the specific federal habeas corpus statute." *Id.* at 491 (Thomas, J., concurring) (internal quotation marks omitted); *Docken*, 393 F.3d at 1030-31 & n.6 (surveying "the line between § 1983 and habeas" and concluding that "the remedies are not always mutually exclusive"). These efforts began in *Preiser*, where the Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser*, 411 U.S. at 500. They continued in *Heck*, where the Court enunciated what has become known as the "favorable termination" requirement: Where a prisoner's

§ 1983 action, if successful, "would necessarily imply the invalidity" of his conviction or sentence, it must be dismissed "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487; *see also Docken*, 393 F.3d at 1027-28. And they were refined, in the wake of *Heck*, in cases most commonly involving prisoner challenges to state disciplinary and parole procedures. *See Docken*, 393 F.3d at 1028 (chronicling cases).

[3] Most recently, the Court in *Wilkinson v. Dotson*, 125 S. Ct. 1242 (2005), reviewed *Preiser*, *Heck*, and their progeny, and explained that:

> These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Id.* at 1248. *Dotson* thus erases any doubt that *Heck* applies both to actions for money damages and to those, like this one, for injunctive relief, and clarifies that *Heck* provides the relevant test to determine whether § 1983 is a permissible avenue of relief for Osborne.

### B.   *Osborne's Claim*

Although the district court recognized that Osborne raises "a direct challenge to [neither] the fact nor duration of imprisonment," it ruled that his claim was *Heck*-barred because he seeks to "set the stage" to attack his underlying conviction. Though this circuit has not yet applied *Heck* in the context of a § 1983 action seeking post-conviction access to DNA evidence, the district court was not without guidance in assessing Osborne's claim. As it observed, three circuits—the Fourth,

Fifth, and Eleventh—have previously confronted the very question we now face. These opinions provide valuable guidance to us as well.

[4] The State argues that Osborne seeks to use § 1983 as a discovery device for a later habeas petition, and that allowing him to do so would circumvent habeas procedural requirements and undermine the principles of comity and federalism that *Heck* protects. It suggests that Osborne reads *Heck*'s "necessarily implies" language too narrowly, and that it is enough if—as the district court was persuaded—the § 1983 action seeks to "facilitate" or "set the stage" for an attack on a conviction in a later proceeding. Put simply, the State contends that if a claim *can* be brought in habeas, it *must* be brought in habeas. Accordingly, it urges us to adopt the reasoning of the Fourth Circuit in *Harvey v. Horan* (*Harvey I*), 278 F.3d 370, 375-79 (4th Cir. 2002), in which a split panel held, for much the same reasons, that § 1983 actions by prisoners seeking post-conviction access to biological evidence are barred by *Heck*. *See id.* at 378 ("[W]e must examine whether a state prisoner's claim falls within the federal habeas corpus statute. If it does, the claim cannot proceed under § 1983."); *see also Kutzner v. Montgomery County*, 303 F.3d 339, 340 (5th Cir. 2002) (adopting *Harvey I*).

[5] Osborne argues, by contrast, that the appropriate question under *Heck* is not whether he seeks to "set the stage" to attack his underlying conviction, but rather whether success on his § 1983 claim "necessarily implies" the invalidity of his conviction. This question must be answered in the negative, he submits, because success on his § 1983 claim guarantees only access to the DNA evidence. Though he concedes that he ultimately hopes to establish his innocence, he points out that additional DNA testing may inculpate him, exculpate him, or be inconclusive. And, even if the testing exonerates him, release would come through an entirely different proceeding, either habeas or clemency. Osborne thus suggests we adopt the reasoning of the Eleventh Circuit in *Bradley v.*

*Pryor*, 305 F.3d 1287, 1288 (11th Cir. 2002), *cert. denied*, 538 U.S. 999 (2003), which held, for these reasons, that a § 1983 action seeking post-conviction access to DNA evidence is not *Heck*-barred. *See also Harvey I*, 278 F.3d at 382 (King, J., concurring in part) ("That act alone—providing Harvey with access to the biological evidence relating to his rape conviction—does not . . . 'necessarily imply' the invalidity of Harvey's conviction or sentence."); *Harvey v. Horan* (*Harvey II*), 285 F.3d 298, 308-09 (4th Cir. 2002) (Luttig, J., respecting the denial of rehearing en banc) (criticizing the *Harvey I* majority's application of *Heck*).

**[6]** We agree with Osborne, and join the Eleventh Circuit in holding that *Heck* does not bar a prisoner's § 1983 action seeking post-conviction access to biological evidence in the government's possession. It is clear to us, as a matter of logic, that success in such an action would not "necessarily demonstrate the invalidity of confinement or its duration." *Dotson*, 125 S. Ct. at 1248. First, success would yield only *access* to the evidence—nothing more. *See Bradley*, 305 F.3d at 1290 ("[A prisoner] prevails in this lawsuit once he has access to that evidence or an accounting for its absence."). Second, further DNA analysis may prove exculpatory, inculpatory, or inconclusive; thus, there is a significant chance that the results will either confirm or have no effect on the validity of Osborne's confinement. *See Harvey II* at 308 ("That these scientific possibilities exist, in and of itself, suffices to establish that the asserted right of mere access is not a direct, or for that matter even an indirect, attack on one's conviction or sentence."). And third, even if the results exonerate Osborne, a separate action—alleging a separate constitutional violation altogether—would be required to overturn his conviction. *See id.*; *Bradley*, 305 F.3d at 1290.

## C. *Dotson*

**[7]** Any remaining doubt as to the propriety of this approach is removed, we believe, by the Court's recent opin-

ion in *Dotson*, which reads "necessarily" to mean "inevitably" and rejects the notion that a claim which *can* be brought in habeas *must* be brought in habeas. 125 S. Ct. at 1246-48. In *Dotson*, the Court considered the § 1983 claims of two Ohio prisoners who alleged *ex post facto* and due process violations at their parole hearings, and who sought injunctive relief in the form of new, constitutionally proper parole hearings. *Id.* at 1245. Ohio argued that these claims were *Heck*-barred because the prisoners "believe that victory on their claims will lead to speedier release from prison," and thus the suits, "in effect, collaterally attack the *duration* of their confinement." *Id.* at 1245-46. The Court rejected this argument, saying:

> The problem with Ohio's argument lies in its jump from a true premise (that in all likelihood the prisoners hope these actions will help bring about earlier release) to a faulty conclusion (that habeas is their sole avenue for relief).

*Id.* at 1246. This confirms our prior understanding, articulated in *Docken*, 393 F.3d at 1030-31 & n.6, that § 1983 and habeas are not always mutually exclusive. It also fatally undermines the State's insistence that a claim which *can* be brought in habeas *must* be brought in habeas—a position embraced in *Dotson* only by Justice Kennedy, the sole dissenter. 125 S. Ct. at 1252 (Kennedy, J., dissenting).

The Court in *Dotson* also observed that *Preiser*'s implied exception to § 1983 coverage exists "where the claim seeks— not where it simply 'relates to'—'core' habeas corpus relief, *i.e.*, where a state prisoner requests present or future release." *Id.* at 1247. And, it repeatedly emphasized that to be barred under *Heck*, a § 1983 claim must, if successful, *necessarily* demonstrate the invalidity of confinement or its duration. *Id.* at 1247-48; *see id.* at 1248 (citing counsel's concession below that the claims would not "inevitably" lead to release). These statements undercut considerably the State's argument that Osborne's claim is *Heck*-barred even if he seeks only to "fa-

cilitate" or "set the stage" for a future attack on his conviction.

Moreover, in response to Ohio's argument that allowing Dotson to sue under § 1983 would contravene principles of comity and federalism, the Court said: Our earlier cases . . . have already placed the States' important comity considerations in the balance, weighed them against the competing need to vindicate federal rights without exhaustion, and concluded that prisoners may bring their claims without fully exhausting state-court remedies so long as their suits, if established, would not necessarily invalidate state-imposed confinement. Thus, we see no reason for moving the line these cases draw . . . .

*Id.* at 1249 (citation omitted). This critically weakens the State's comity argument.

Ultimately, the *Dotson* court found it key that neither prisoner sought an injunction ordering "immediate or speedier release"; at most, success meant a new parole hearing, at which the prisoners might—or might not—receive reduced sentences. *Id.* at 1248. Thus, the Court concluded that "a favorable judgment will not necessarily imply the invalidity of their convictions or sentences." *Id.* (citing *Heck*, 512 U.S. at 487) (alterations and internal quotation marks omitted). This reasoning applies with equal force and dictates the outcome here.

We acknowledge that the Fourth Circuit, in *Harvey I*, raised weighty concerns about comity, finality, and the proper role of the courts in fashioning the contours of "new" constitutional rights. 278 F.3d at 374-77. In vindicating these concerns, however, the *Harvey I* majority, in our view, strayed from the "necessarily implies" language adopted in *Heck*. Thus, for the reasons first explained by Judges King and Luttig in *Harvey I* and *II*, and later embraced by the Eleventh Circuit in *Bradley*, we hold that *Heck* does not bar a prisoner's

§ 1983 action seeking post-conviction access to biological evidence in the government's possession.

## CONCLUSION

[8] For the above reasons, Osborne's § 1983 action "should be allowed to proceed, in the absence of some other bar to the suit." *Heck*, 512 U.S. at 487 (footnotes omitted). Accordingly, we reverse the judgment of the district court and remand for further proceedings. We express no opinion as to whether Osborne has been deprived of a federally protected right, and leave that question to the district court to address in the first instance.

REVERSED and REMANDED.