**Emmitt GRIER, Jr., Appellant**

v.

**Superintendent Edward J. KLEM; Erie County District Attorney; Commonwealth of Pennsylvania; Office of the Prothonotary.**

No. 06–3551.

United States Court of Appeals, Third Circuit.

Argued on Dec. 16, 2009.

Filed Jan. 12, 2010.

Anderson T. Bailey, Esq., Jones Day, Pittsburgh, PA, for Appellant.

John D. Goetz, Esq., Jones Day, Pittsburgh, PA, for Appellant.

Charles T. Kotuby Jr., Esq. (Argued), Jones Day, Washington, D.C., for Appellant.

Matthew J. McLaughlin, Esq. (Argued), Assistant Solicitor for Erie County, Erie, PA, for Erie District Attorney Appellee.

Before: FISHER, HARDIMAN, and VAN ANTWERPEN, Circuit Judges.

## OPINION OF THE COURT

### VAN ANTWERPEN, Circuit Judge.

Appellant–Plaintiff Emmitt Grier, Jr. ("Grier") appeals from the District Court's decision granting Appellee–Defendants Erie County District Attorney's ("District Attorney") and Superintendent Edward Klem's motion to dismiss his § 1983 claim, determining it is barred by the *Heck* rule.[1] For the following reasons, this Court will vacate the District Court's order and remand for further proceedings.

### I.

Grier was convicted of two counts of rape, one count of attempted rape, one count of burglary and three counts of unlawful restraint. He received a sentence of twenty-eight and-one-half to seventy-five years of imprisonment. The facts underlying these charges are as follows. On June 30, 1998, a perpetrator entered Ms. Loretta Hansbrew's ("Ms. Hansbrew") home while she was sleeping, taped her eyes and hands, and then raped her (the "June incident"). She never saw her assailant's face or recognized his muffled voice, but she noticed that he was African–American. Five months later, in November, Ms. Hansbrew was attacked again (the "November incident"). A perpetrator had hidden in her van. He demanded she pull over while she was driving. Then, he taped her eyes, bound her feet, and unsuccessfully attempted to rape her. Again, Ms. Hansbrew did not see his face.

On August 31, 1999, Grier visited Ms. Hansbrew's home to request water for his radiator. He knew Ms. Hansbrew because he was her daughter's fiancé. During the visit, Grier and Ms. Hansbrew had a sexual encounter (the "August incident"). Ms. Hansbrew reported the incident to the police, who took Grier into custody.

Grier waived his *Miranda* rights upon arrest. He offered to make a videotaped statement outside the presence of counsel. In it, he admitted to having had a sexual encounter with Ms. Hansbrew on August 31, 1999. A half-hour after the completion of the first interview, a detective initiated a second videotaped interview where he asked Grier about the June and November incidents. Grier confessed to both of those crimes as well.

Following both the June and August incidents, medical personnel used rape kits to gather biological evidence from Ms. Hansbrew. The rape kits were sent to the Pennsylvania State Police Laboratory to be compared to determine if the same perpetrator had committed both crimes. The kits were not analyzed, however, because Grier gave videotaped statements confessing to these crimes. Police testified that a state laboratory policy prevents the laboratory from analyzing DNA evidence in cases where the identity of the defendant is not in question due to a taped confession.

---

1. Grier listed Edward J. Klem, Superintendent of SCI–Mahoney, as a defendant in this action. On August 31, 2009, Mr. Klem notified this Court he would not be participating in this appeal. Plaintiff recognized in open court, and in the briefs, that Mr. Klem cannot provide him the "relief [he] seeks." (Appellant's Reply Br. 1 n. 1.) Furthermore, Plaintiff consented to Mr. Klem's dismissal. There is no formal documentation, however, confirming that Mr. Klem was dismissed from this case. On remand, this Court recommends that Plaintiff file a motion for voluntary dismissal of Mr. Klem under Fed.R.Civ.P. 41(a), or that Mr. Klem move for an involuntary dismissal under Fed.R.Civ.P. 41(b).

Grier later testified, and continues to contend, that he did not commit the June and November crimes. He claims he confessed to the crimes in error because he was extremely emotional and confused.

Grier's defense attorneys never moved to suppress the videotaped statements, and neither Grier nor the Commonwealth had the DNA tested. Grier was initially represented by public defender A.J. Adams ("Adams"). Despite Grier's requests, Adams did not move to suppress Grier's videotaped statements, concluding such a motion would be baseless. Due to a personality conflict, Adams was permitted to withdraw from Grier's case in April 2000.

Grier contends his subsequent attorney, James Pitonyak ("Pitonyak"), did not follow or convey his instructions to have DNA testing done on both rape kits. Pitonyak, however, claims that he and Grier discussed, but decided against, requesting DNA testing. The rape kits were never subjected to DNA testing and the jury convicted Grier primarily based on eyewitness testimony offered by the Commonwealth and Grier's videotaped statements.

Grier filed a timely motion for acquittal or a new trial maintaining his innocence and requesting DNA analysis, which was denied. The Pennsylvania Superior Court affirmed the denial, and the Pennsylvania Supreme Court denied Grier's petition for appeal.

Grier filed a *pro se* motion for postconviction collateral relief ("PCRA") in which

he claimed ineffective assistance of counsel and that the prosecutor violated his constitutional rights by misrepresenting the facts in the case. He alleged his counsel was ineffective for failing to request DNA analysis and for not moving to suppress his videotaped statements. Grier filed a supplemental brief through appointed counsel, emphasizing that he was pursuing court-ordered DNA testing. After oral argument and an evidentiary hearing, Judge Domitrovich dismissed Grier's PCRA petition as "without merit." (App.A126.) The court determined that Grier was not entitled to postconviction DNA testing under Pennsylvania precedent that precludes postconviction access to DNA evidence when the conviction rests on voluntary confessions. *See Commonwealth v. Godschalk*, 451 Pa.Super. 425, 679 A.2d 1295, 1297 (1995).[2]

Grier alleges that he did not appeal the denial of his first PCRA due to a miscommunication with counsel. His appeal rights were reinstated after he informed the court of this miscommunication. Then, the Pennsylvania Superior Court affirmed the denial of his PCRA petition, and the Pennsylvania Supreme Court denied his request for appeal.

On January 6, 2005, Grier filed this § 1983 claim alleging the District Attorney and Mr. Klem denied his procedural due process rights by refusing him access to the rape kits for DNA testing. The case was referred to a United States Magis-

**2.** Even though Pennsylvania's Postconviction DNA Access Law went into effect between the time Grier filed his PCRA petition and when the court issued its judgment, the court made its determination without citing it. *See* 42 Pa.C.S. § 9543.1. Therefore, Grier's request for postconviction access to evidence has never been considered under this new statute.

Notably, the bar to postconviction DNA testing based on a pre-charge confession has

been applied to petitions filed under Pennsylvania's Postconviction DNA Access Law. *Commonwealth v. Young*, 873 A.2d 720, 727 (2005). But, the Pennsylvania Supreme Court has granted an appeal on the issue of whether a confession should bar a petitioner's access to postconviction DNA testing. *Commonwealth v. Wright*, 597 Pa. 233, 951 A.2d 263 (2008).

trate Judge for recommendation. Grier moved for summary judgment, and Defendants moved to dismiss the action based on the failure to make out a cognizable § 1983 claim and on the principles of res judicata and collateral estoppel.[3]

The United States Magistrate Judge determined that Grier's allegation "necessarily implicates ... his state court convictions." (App.A6.) She noted that under *Heck v. Humphrey,* a prisoner cannot bring a § 1983 claim if the success of that claim would undermine the prisoner's conviction or sentence, unless that conviction or sentence has already been called into question. 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The Magistrate Judge recommended that Grier's motion be dismissed "as an improper attempt to collaterally attack plaintiff's state court criminal conviction."[4] (App.A5.) Based on the Magistrate Judge's recommendation, on June 29, 2006, the District Court granted Defendants' motion to dismiss and denied Grier's request for summary judgment.

Grier filed a timely appeal. This Court stayed his appeal pending the Supreme Court's decision in *District Attorney's Office for the Third Judicial District v. Osborne,* where the Supreme Court granted certiorari on, but did not decide, the question of whether an incarcerated plaintiff was barred from bringing a § 1983 claim to request access to evidence for postconviction DNA analysis. —— U.S. ——, 129 S.Ct. 2308, 2319, 174 L.Ed.2d 38 (2009).

**II.**

The District Court exercised subject matter jurisdiction over Grier's § 1983 claim pursuant to 28 U.S.C. § 1331 and § 1343. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. This Court exercises plenary review over a district court's grant of a motion to dismiss for failure to state a claim. *AT & T Corp. v. JMC Telecom, LLC,* 470 F.3d 525, 530 (3d Cir.2006). We do not inquire whether a plaintiff will ultimately prevail when considering a motion to dismiss, only whether the plaintiff is entitled to offer evidence to support his or her claims. *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996).

**III.**

This case requires this Court to consider the boundary between two statutes that provide prisoners access to a federal forum to bring claims of unconstitutional treatment at the hands of state officials: the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the federal habeas corpus statute, 28 U.S.C. § 2254. Section 1983 provides for a broad right of action, allowing recovery for anyone suffering from "the deprivation of any rights, privileges, or immunities secured by the Constitution" by anyone acting under the color of state law. 42 U.S.C. § 1983. By § 1983's terms, all habeas corpus actions could be brought as § 1983 claims; to prevent that, the Supreme Court determined that the two provisions must be read in harmony. *See Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The Supreme Court created an "implicit excep-

---

**3.** Neither the Magistrate Judge nor the District Court entertained Defendants' arguments for dismissal based on res judicata or collateral estoppel.

**4.** The Magistrate Judge also commented that the true defendant in this case is Judge Domitrovich. It noted, however, that a § 1983

claim against Judge Domitrovich would be dismissed under principles of judicial immunity. We cannot affirm the judgment below on this basis, however. The evidence that Grier seeks is in the custody of the Erie County District Attorney, and no showing has been made that he is not the proper defendant.

tion" to § 1983's broad scope for actions that lie at the "core" of habeas corpus, *id.* at 487, 489, 93 S.Ct. 1827, which include any prisoner's claims that challenge the "validity of the fact or length of their confinement," *id.* at 490, 93 S.Ct. 1827.

■ In *Heck v. Humphrey,* the Supreme Court expanded the circumstances in which a prisoner is barred from bringing a § 1983 claim. 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). It held a prisoner does not have a cognizable § 1983 claim, even if he or she does not seek relief from the fact or duration of confinement, for alleged unconstitutional conduct that would invalidate his or her underlying sentence or conviction unless that conviction has already been called into question. *Id.* at 486–87, 114 S.Ct. 2364. The Supreme Court thereby effectively barred prisoners from collaterally attacking their underlying convictions, directly or indirectly, through the § 1983 vehicle. To determine whether a § 1983 claim should be dismissed as an impermissible collateral attack on an underlying conviction,

> "[A] district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."

*Id.* at 487, 114 S.Ct. 2364.

■ Defendants contend that the relief Grier seeks would necessarily implicate or undermine the validity of his criminal con-

victions. Previously, several appellate courts were split as to whether a § 1983 claim to compel state officials to release evidence for postconviction DNA testing is a claim seeking to undermine a plaintiff's conviction. *Compare Kutzner v. Montgomery County,* 303 F.3d 339, 340 (5th Cir.2002) (holding that "no § 1983 claim exists for injunctive relief to compel DNA testing"), *Harvey v. Horan,* 278 F.3d 370, 377 (4th Cir.2002) (same), *and Boyle v. Mayer,* 46 Fed.Appx. 340, 340 (6th Cir. 2002) (same), *with Bradley v. Pryor,* 305 F.3d 1287, 1290 (11th Cir.2002) (holding that a § 1983 claim requesting release of evidence for DNA testing is cognizable because plaintiff only seeks access to evidence). These opinions, however, were all entered prior to the Supreme Court's decision in *Wilkinson v. Dotson.* 544 U.S. 74, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005). Following *Dotson,* the Supreme Court noted that the circuit split faded away. *See Osborne,* 129 S.Ct. at 2318 (noting that since *Dotson,* all courts to consider whether prisoners can use § 1983 claims to request access to biological evidence have agreed).

In *Dotson,* the Supreme Court held that state prisoners may bring § 1983 claims to request new parole hearings under fairer procedures because seeking to invalidate state procedures "will not 'necessarily imply the invalidity of [their] conviction[s] or sentence[s].'" *Dotson,* 544 U.S. at 82, 125 S.Ct. 1242 (quoting *Heck,* 512 U.S. at 487, 114 S.Ct. 2364). The Court acknowledged that the plaintiffs "hope[d]" their § 1983 claims would "bring about earlier release," but the Court determined that hope was not sufficient to bar a § 1983 claim if that hope could not be realized without further proceedings. *Id.* at 78, 82, 125 S.Ct. 1242.

■ Courts have interpreted *Dotson* as rejecting the argument offered by Defen-

dants in this case—that *Heck* bars any § 1983 claim that a plaintiff hopes will set the stage to bring him or her speedier release from prison. *McKithen v. Brown,* 481 F.3d 89, 102–03 (2d Cir.2007); *Savory v. Lyons,* 469 F.3d 667, 672 (7th Cir.2006); *Osborne v. Dist. Attorney's Office for Third Judicial Dist.,* 423 F.3d 1050, 1054 (9th Cir.2005), *rev'd on other grounds,* —— U.S. ——, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009); *cf. Georgevich v. Strauss,* 772 F.2d 1078, 1087 (3d Cir.1985) (determining prior to *Dotson* that "the fact that prisoner's success in the litigation might increase the chance for early release does not, in itself, transform the action into one for habeas corpus"). *Dotson* indicated that the proper inquiry to determine whether a prisoner's § 1983 claim falls into the habeas exception is whether his or her success would *necessarily* require the prisoner's release or a reduction in the prisoner's sentence. *McKithen,* 481 F.3d at 102 (citing *Dotson,* 544 U.S. at 80, 125 S.Ct. 1242). Thus, it is "irrelevant" that a prisoner might, following success in a § 1983 suit, find himself or herself in a better position to raise subsequent challenges to his conviction or sentence. *Id.*

In light of *Dotson,* all three appellate courts that have considered the question have held that a plaintiff can use the § 1983 vehicle to request the release of evidence for postconviction DNA analysis. *McKithen,* 481 F.3d at 103; *Savory,* 469 F.3d at 672; *Dist. Attorney's Office for Third Judicial Dist.,* 423 F.3d at 1054–55. They reason that *Heck* does not bar requests for DNA analysis because, even if a plaintiff prevails, he or she merely gains *access* to evidence, and having access to evidence does not necessarily invalidate the prisoner's conviction. *McKithen,* 481 F.3d at 102–03; *Savory,* 469 F.3d at 672. At best, a plaintiff may be able to use the results of the DNA analysis in future proceedings, which is not prohibited under

*Heck. McKithen,* 481 F.3d at 103; *Savory,* 469 F.3d at 672. We find this reasoning persuasive.

The Supreme Court never determined whether a prisoner could use a § 1983 claim to gain postconviction access to evidence for DNA testing, but it assumed the Ninth Circuit correctly found that *Heck* did not bar such a claim. *Osborne,* 129 S.Ct. at 2319. Notably, four of the Justices endorsed the Ninth Circuit's determination that a prisoner could use a § 1983 claim in this manner. *Id.* at 2331 n. 1 (Stevens, J., dissenting). Similarly, this Court has not issued a binding opinion regarding whether a plaintiff may avail him or herself of the § 1983 vehicle, rather than a habeas corpus proceeding, to request access to evidence for postconviction DNA analysis.

■ In light of *Osborne* and *Dotson,* we agree with our sister courts and hold that in the narrow circumstance where a prisoner files a § 1983 claim to request access to evidence for DNA testing, that claim is not barred by the principles outlined in *Heck.* Even if Grier does prevail on this § 1983 claim, he will merely gain access to biological evidence, which in and of itself cannot invalidate or undermine his convictions.

■ There is no substantive due process right to access DNA evidence, *Osborne,* 129 S.Ct. at 2322, and procedural due process does not *require* that a district attorney disclose all potentially exculpatory evidence for postconviction relief to a prisoner, *id.* at 2319–20. Therefore, by deciding Grier's § 1983 claim is not barred, we have not determined whether his due process rights have been violated. The District Court did not address this issue.

Grier requests this Court remand this case to the District Court to determine whether Grier's procedural due process rights were violated; but, the Erie District Attorney suggests such a remand is "pointless." (Appellee's Br. 16.) The Erie District Attorney explains that remand is pointless because there is no state or federal authority which would afford Grier a due process right to obtain postconviction DNA testing. Whether Grier will successfully demonstrate that his due process rights have been violated in a subsequent proceeding is beyond the scope of this appeal and is beside the point. *See Nami*, 82 F.3d at 65 (noting that when considering a motion to dismiss, this Court does "not inquire whether the plaintiffs will ultimately prevail").

In *Osborne*, the Supreme Court held that constitutional claims like Grier's must be analyzed "within the framework of the State's procedures for postconviction relief" and that only when those procedures are determined fundamentally unfair or constitutionally inadequate will a federal action under § 1983 lie. *Osborne*, 129 S.Ct. at 2320. The Court thus envisioned a plaintiff like Grier, who availed himself of state procedures without success and claims a due process violation precisely because of that failure. Therefore, as instructed by the Supreme Court in *Osborne, id.*, we will remand this case to the District Court to determine whether Grier's procedural due process rights, when considered within the framework of Pennsylvania's procedures for postconviction relief, were violated.

## IV.

We re-emphasize that our holding in this case is narrow and we decide only that a party can use a § 1983 claim to request access to evidence for postconviction DNA testing. We do not decide that the denial of access necessarily violates a prisoner's due process rights or that a defendant can use a § 1983 claim to request postconviction access to evidence for other reasons. For the foregoing reasons, we vacate the District Court's decision determining that *Heck* bars a § 1983 claim requesting access to evidence for postconviction DNA testing. We remand for further proceedings to determine whether, based on *Osborne*, Grier's procedural due process rights were violated.