NOT PRECEDENTIAL

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

_____

No. 14-3338
_____

VINCENT MERCER,

Appellant

v.

SEPTA; LEANDER BERRY; JASON GRIFFIN

_____

On Appeal from the District Court
for the Eastern District of Pennsylvania
(District Court No.: 2-12-cv-06929)
District Judge:  Honorable Eduardo C. Robreno

_____

Submitted under Third Circuit LAR 34.1(a)
on March 19, 2015

Before:  McKEE, Chief Judge, RENDELL and FUENTES, Circuit Judges

(Opinion filed: April 1, 2015)

_____

## OPINION[*]

**RENDELL**, <u>Circuit Judge</u>,

Plaintiff-Appellant Vincent Mercer appeals from the District Court's grant of summary judgment on his Americans with Disabilities Amendments Act ("ADA"), Pennsylvania Human Rights Act ("PHRA"), and 42 U.S.C. § 1983 claims against the Southeastern Pennsylvania Transportation Authority ("SEPTA") and two former supervisors, Leander Berry ("Berry") and Jason Griffin ("Griffin"). For the reasons stated below, we will affirm.

## I. Background

Mercer worked as a maintenance custodial bus driver for SEPTA from September 2001 until January 14, 2011. Mercer has diabetes, high blood pressure, and high cholesterol, and is indisputably "disabled" within the meaning of the ADA. On June 21, 2010, Mercer presented SEPTA with a note from his doctor stating that overheated conditions could exacerbate Mercer's hypertensive condition. Subsequently, SEPTA's medical director, Dr. Jeffrey Erinoff, recommended to Mercer's supervisors that he be permitted to clean buses with the air conditioning turned on when the outside temperature exceeded ninety degrees. Mercer alleged that, despite this recommendation, he was routinely assigned to work on buses without air conditioning during the remainder of the summer of 2010. On June 28, 2010, for example, Mercer passed out while working on a

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

hot bus. He was taken to the emergency room, and his treating physician cleared him to return to work on July 6, 2010 with the restriction that he avoid excessive heat. On July 20, 2010, Dr. Erinoff conducted a physical examination of Mercer, after which he again recommended to Mercer's supervisors that if the temperature exceeded 90 degrees, Mercer should be permitted to clean buses with the air conditioning on. Mercer alleged that even after this recommendation, he was made to work on excessively hot buses, although he does not point to any specific incidents in his complaint.

Mercer also claimed that defendant Berry frequently cursed at him, called him "fat," and made fun of his weight during his employment. On August 18, 2010, Mercer had a confrontation with Berry in which Berry demanded that Mercer transport a bus to a different facility. Mercer did not do so and instead left work early, stating he did not comply because he was not feeling well and believed he had permission from Berry's supervisor, Griffin, to leave. The next day, Mercer was suspended until further notice pending an investigation. Griffin concluded that Mercer had violated a direct order from a supervisor, which subjected him to immediate termination. The Transport Workers Union Local 234 ("Union"), of which Mercer was a member, appealed that determination. As a result, Mercer agreed to return to work on "Last Chance" status, under which he would be automatically discharged if he incurred any disciplinary action during the next 730 days.

Once he was back at work, Mercer received several Vehicle Maintenance Information System ("VMIS") violations.[1]  He received his sixth violation notice on December 27, 2010, and because of his "Last Chance" status, SEPTA terminated his employment effective January 14, 2011.  Mercer filed a claim against SEPTA with the Equal Employment Opportunity Commission ("EEOC") on July 8, 2011, and received a right to sue letter on September 20, 2012.  He timely filed his complaint against SEPTA, who moved for summary judgment following completion of discovery.  The District Court granted SEPTA's motion for summary judgment.

Mercer now appeals the District Court's grant of summary judgment, claiming the District Court incorrectly 1) found his reasonable accommodation and hostile work environment claims to be time-barred, 2) dismissed Mercer's discriminatory discharge claim for failure to demonstrate a pretext, 3) dismissed his retaliation and First Amendment claims for lack of causation, and 4) dismissed his Equal Protection claim for failure to point to similarly situated individuals who were treated differently.

## II. Discussion

This Court has plenary review of the grant or denial of summary judgment.  *Mylan Inc. v. SmithKlineBeecham Corp.*, 723 F.3d 413, 418 (3d Cir. 2013).  Summary judgment is appropriate "if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

---

[1]  VMIS is a computer program SEPTA uses to track employees' time and assign work. An employee who receives six such violations in one year is advanced one level on SEPTA's progressive disciplinary policy.

4

as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A. Mercer's reasonable accommodation claim is time-barred.

The District Court correctly dismissed Mercer's reasonable accommodation claim as time-barred. Under the ADA, a plaintiff must file a claim with the EEOC within 300 days of the action complained of in order not to be time-barred on that claim. 42 U.S.C.A. § 2000e-5(e)(1).[2] (This requirement is provided for in Title VII of the Civil Rights Act of 1964.) Mercer filed his EEOC charge on July 8, 2011. As such, the District Court considered only those events after September 11, 2010, 300 days prior, in evaluating his reasonable accommodation claim. Mercer argues that while his formal requests for accommodation, through his doctor's notes, took place before September 11, he continued to request accommodation throughout the summer of 2010, and SEPTA continued to deny this request by making him work on overheated buses through October 2010. He argues that these incidents should restart the clock, under a continuing violations theory. The District Court correctly rejected this argument for two reasons: (1) Mercer's requests for accommodation, assuming they were denied, were not continuing violations because the denial of a reasonable accommodation is a discrete event, and (2)

---

[2] Although a plaintiff must normally bring suit within 180 days of an alleged discriminatory act, where the plaintiff files a claim with a state or local agency authorized to adjudicate the claim, the plaintiff is granted an extension of 300 days from the original discriminatory act with which to file the claim with the EEOC. Since the matter originated in Pennsylvania, which is a deferral state with a state agency that has authority to investigate employment discrimination charges, the plaintiff is permitted to file charges with the EEOC within 300 days of the alleged discriminatory act under the provisions of 42 U.S.C. § 2000e–5(e)(1).

Mercer had not demonstrated an independently recoverable denial of a requested accommodation after September 11, 2010.

A reasonable accommodation request is a one-time occurrence rather than a continuing practice, and therefore, does not fit under the continuing violations theory. *Aubrey v. City of Bethlehem*, 466 F. App'x 88 (3d Cir. 2012). In *Aubrey*, we held that continuing violations theory does not apply to denial of reasonable accommodation under ADA because the nature of such a claim does not involve repeated conduct. *Id.* at 92. Assuming that Mercer's visit to the emergency room on June 28, 2010 was caused by SEPTA's alleged denial of his accommodation request, Mercer's EEOC claim was filed well after the 300-day deadline, on July 8, 2011. Additionally, Mercer did not specify incidents in which SEPTA's failure to accommodate his disability that occurred *after* September 11. Instead, he asserted only general complaints about being assigned to non-air-conditioned buses. Therefore, the District Court correctly granted summary judgment to SEPTA regarding Mercer's reasonable accommodation claim.

**B. Mercer's hostile work environment claim is time-barred.**

The District Court correctly concluded that Mercer's hostile work environment claim was time-barred because the date of his last alleged incident of harassment was more than 300 days before the day he filed his hostile work environment claim with the EEOC. In *Nat'l Railroad Passenger Corp. v. Morgan*, the Supreme Court held that the 300-day EEOC deadline for filing employment discrimination claims does not apply to hostile work environment claims if actions that contributed to the hostile work environment span a period that both exceed and are included within the 300-day window.

6

536 U.S. 101, 115-117 (2002). As the *Nat'l Railroad* Court explained, if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117, 122.

The District Court correctly noted that Mercer could not point to any incidents contributing to his alleged hostile work environment after September 11, 2010, because Berry, Mercer's alleged harasser, was transferred to a different work location in early October 2010 and Mercer did not return to work after his suspension until September 27, 2010. Therefore, Berry and Mercer did not work together for an extended period of time within the 300 days of his EEOC complaint, and most, if not all, of the complained-of comments from Berry were alleged to have occurred outside the timeliness window.[3] Furthermore, Mercer points to no specific incidents that took place after September 27 that could have contributed to his hostile work environment claim. As such, the District Court correctly granted summary judgment to SEPTA on this claim as well.

---

[3] To establish a hostile work environment claim under the ADA, a plaintiff must show that: (1) he is a qualified individual with a disability, (2) he was subject to unwelcome harassment, (3) the harassment was because of his disability or request for an accommodation, (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and (5) the employer knew or should have known of the harassment and failed to take prompt, effective remedial action. *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999). Because we note that Mercer's claim is time-barred, we need not analyze whether he met the elements of a hostile work environment claim. Even so, there is no evidence that Mercer experienced harassment that was "severe or pervasive." At most, the relevant harassment lasted a few days, between September 27 and the beginning of October 2010. Mercer points to only one incident, from August 18, 2010, which could have fit the bill of a "severe" incident, but this took place before the timeliness window.

*C. Mercer provided no evidence of pretext for his discriminatory discipline and discharge claims.*

The District Court correctly dismissed Mercer's discriminatory discharge claim because Mercer never offered any evidence that would demonstrate that SEPTA's proffered reasons for disciplining and terminating him were a pretext for intentional discrimination based on his disability. To establish a prima facie case of disparate treatment under the ADA, a plaintiff must show "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). If the plaintiff makes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* Once the defendant has provided such a justification, the burden then shifts back to the plaintiff to demonstrate that this stated reason is a mere pretext for discrimination. *Id.*

Mercer disputes whether he should have been placed on "Last Chance" status, and the basis for his six VMIS violations, which led to his termination in January 14, 2011. In *Fuentes v. Perskie*, this Court held that "[t]o discredit an employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." 32 F.3d 759, 765 (3d Cir. 1994). "Rather, the non-moving plaintiff must demonstrate such

8

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Id.*

The District Court correctly granted summary judgment to defendant on this claim because Mercer provided no evidence that the reasons given for his "Last Chance" status and termination were pretextual. Mercer was placed on "Last Chance" status for violating a direct order from a supervisor. Mercer has not demonstrated that this reason was a pretext for intentional discrimination. Mercer also has not demonstrated that SEPTA's proffered reason for terminating him - his VMIS violations - were tainted with discriminatory intent, nor has he shown that they were weak, implausible, inconsistent, incoherent, or contradictory. While Mercer disagrees with the basis of his VMIS violations, as the District Court correctly stated, his disagreement with the basis of those violations does not demonstrate that SEPTA's proffered reasons for terminating him were pretextual.

### D. *Mercer provided no causal connection for his retaliation claim.*

The District Court correctly concluded that Mercer has no retaliation claim because he was unable to demonstrate a causal connection between his actions and his termination. In order to establish a *prima facie* claim of retaliation, a plaintiff must prove: (1) that he engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's

adverse action. *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002). Mercer argued that SEPTA retaliated against him for his request for an accommodation in June 2010 and for filing an EEOC charge, by suspending him in August 2010, and by terminating him in January 2011.[4]

In the absence of other evidence, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Shellenberger v. Summit Bancorp., Inc.*, 318 F.3d 183, 189 n. 9 (3d Cir. 2003) (quoting *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The adverse action must occur within days, not months, of the protected activity. In *Williams v. Philadelphia Hous. Auth. Police Dep't*, this Court found that a span of two months between the protected activity and the adverse employment action was not enough to find a causal link. 380 F.3d 751, 760 (3d Cir. 2004). In *Jalil v. Avdel Corp.*, however, two days was enough to find a causal link. 873 F.2d 701, 708 (3d Cir. 1989). The District Court correctly found that Mercer provided no evidence of a causal connection between his request for an accommodation in June 21, 2010 and either (1) his suspension in August 19, 2010, two months later, nor (2) his ultimate termination in January 14, 2011, over seven months later.

**E.  The District Court properly dismissed Mercer's § 1983 claims.**

The District Court correctly dismissed Mercer's § 1983 First Amendment retaliation claim for the same reasons it dismissed his ADA retaliation claim: Mercer

---

[4] Mercer also argued that SEPTA's February 9, 2012 reinstatement offer if he agreed to waive his claims against SEPTA were "anticipatory retaliation." As SEPTA correctly pointed out, Mercer waived this argument by not raising it before the District Court.

failed to demonstrate the necessary causal link between his allegedly protected activity and an adverse employment action. The District Court also correctly found that Mercer had no Equal Protection claim. To bring a successful § 1983 claim for a denial of Equal Protection, a plaintiff must prove the existence of purposeful discrimination by demonstrating that the plaintiff was treated differently from other, similarly situated individuals because of his status. *Blunt v. Lower Merion School District*, 767 F.3d 247, 273 (3d Cir. 2014). Mercer failed to identify any similarly situated individuals who were treated differently. The District Court therefore correctly dismissed Mercer's § 1983 claims.

### III. Conclusion

The District Court did not err in granting summary judgment to SEPTA. Mercer's reasonable accommodation and hostile work environment claims are time-barred. His discriminatory discharge claims fail because he does not demonstrate that SEPTA's proffered reasons for its actions were a pretext for discrimination. His retaliation and First Amendment claims show no causal connection between his allegedly protected activity and any adverse employment action. Finally, his Equal Protection claim fails to point to similarly situated individuals. As such, we will affirm.