NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1156
_____

TERRY KRISS; DIANE KRISS, individually as husband and wife,

Appellant

v.

FAYETTE COUNTY, a municipality; FAYETTE COUNTY AIRPORT AUTHORITY, a
municipal unit; VINCENT VICITES, individually and in his official capacity as Commissioner
for Fayette County; VINCE ZAPOTOSKY, individually and in his official capacity as
Commissioner for Fayette County; SARA ROSIEK, individually and in her official capacity as
Director of the Office of Planning, Zoning and Community Development;
TERRY SHALLENBERGER, individually and in his official capacity as the Fayette County
Airport Authority Board Chairman
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 11-cv-00057)
District Judge: Honorable David S. Cercone
_____

Submitted Under Third Circuit LAR 34.1(a)
October 23, 2012

Before: HARDIMAN, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

(Filed: November 16, 2012)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Terry and Diane Kriss (the Krisses) appeal the District Court's dismissal of their First Amendment retaliation claim against Defendants Fayette County, Vincent Vicites, Vincent Zapotosky, and Sara Rosiek. We will affirm.

I

Because we write for the parties, who are well acquainted with the case, we recite only the facts and procedural history essential to its disposition. The following facts pleaded by the Krisses are assumed to be true.

The Krisses own the historic Meason House in Fayette County, which is surrounded on all sides by property owned by the Cellurale family. The Krisses and Cellurales have been at odds since at least 1995, when Joey Cellurale attempted to rezone five acres of his land to conduct an auto body business. The Krisses appealed the attempted rezoning to the Zoning Hearing Board (ZHB) and won. Later in 1995, however, the ZHB granted Cellurale a non-conforming use permit over the Krisses' objections.

In 1996, Cellurale's non-conforming use permit was revoked by the Court of Common Pleas. For six months thereafter, the Fayette County Zoning Office failed to enforce the court's order despite constant prodding from the Krisses. The Zoning Office finally issued a cease and desist order to Cellurale in November 1996, but, in the words

2

of the complaint, he "was permitted to continue running his business" after that.

Another zoning dispute began in 1996, when Cellurale attempted to rezone sixteen acres of his land for business use. Although initially tabled, the plan was approved in 1999 by the Fayette County Planning Commission. In 2000, the Court of Common Pleas reversed the Planning Commission and ordered Cellurale to cease and desist. Although the Krisses made numerous requests to enforce that order, their requests fell on deaf ears. In December 2000, the Krisses filed a mandamus action against the Zoning Office to enforce the order. Although the Zoning Office posted the order on Cellurale's property, it took no further steps to enforce the order.

The appeal before us arose out of a zoning dispute that began in May 2001, when the ZHB granted Cellurale a special zoning exception that allowed him to operate his business subject to certain conditions. In April 2002, the Court of Common Pleas upheld the special exception. For the next four years, the Krisses "constantly contacted the Zoning Office regarding [Cellurale]'s repeated violations of the conditions" but the Zoning Office made "repeated refusals to address the complaints." The Krisses finally made some headway in 2006, when zoning officer Buddy Lloyd Eicher sent five signed enforcement letters to Cellurale regarding various violations. In February 2007, Cellurale appealed these letters to the ZHB, which denied the Krisses permission to participate in the hearing. In November 2007, the ZHB overturned all the enforcement letters against Cellurale despite evidence that he was in violation of the conditions. In December 2007,

3

Fayette County appealed the ZHB's decisions to the Court of Common Pleas. The Krisses filed a motion to intervene, which was denied. From October to December 2008, Fayette County officials met to discuss a settlement with Cellurale. Fearing a settlement, the Krisses filed another motion to intervene in January 2009, which was again denied. The Pennsylvania Commonwealth Court upheld the denial in June 2009 and noted that the Krisses could sue the Cellurales. Shortly thereafter, Fayette County withdrew its appeal against Cellurale. In October 2009, the Krisses sued Cellurale in the Court of Common Pleas to enforce the conditions, and that lawsuit constitutes the protected activity underlying the Krisses' First Amendment retaliation claim at issue in this appeal.

In early 2010, the Krisses observed the construction of buildings on property belonging to James and Marilyn Cellurale. Mrs. Kriss went to the Zoning Office in June 2010 to ask whether the Cellurales had a building permit, and was told they did not. In July, Mrs. Kriss returned to the Zoning Office and was again informed that no building permit had been issued. Mrs. Kriss then spoke with zoning officer Paul Pato, who confirmed the absence of a building permit and stated that he would bring the Cellurales into compliance. A week later, the Krisses visited the Zoning Office again and Pato informed them that the Cellurales did not need a building permit because they had received an exemption for constructing agricultural structures. However, the building and signs on the Cellurale property indicated that they were operating a landscaping and snow removal business rather than a farm.

In August 2010, Mrs. Kriss delivered two more complaints about the Cellurales' construction to Jennifer Mosier in the Zoning Office, who explained that zoning officer Sue Martin would receive the complaints on Monday. The Krisses received no response on Monday and visited Martin later in the week. At that time, Martin told the Krisses that the Cellurales had received a permit to construct a lean-to. When the Krisses replied that many buildings other than a lean-to were being constructed, Martin refused to acknowledge the Krisses' argument or visit the site. When the Krisses showed Martin pictures depicting a building that clearly violated a setback requirement, Martin stated that she could not do anything about it because she was not an engineer.

In November 2010, the Krisses' attorney sent a letter regarding their complaints to Sara Rosiek, the Director of Zoning, and requested a response within ten days. After three weeks passed without a response, the Krisses' attorney called the Zoning Office and spoke with Martin. Martin said that Rosiek had not given her the complaints even though it was Rosiek's responsibility to do so.

A few months later, the Krisses filed a complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of Pennsylvania. The District Court dismissed the complaint in its entirety, and the Krisses now appeal only the dismissal of their First Amendment retaliation claim against Defendants Fayette County, County Commissioners Vincent Vicites and Vincent Zapotosky, and Director of Zoning Sara Rosiek. That claim is based on the Krisses' treatment at the hands of the Zoning

Office since October 2009, which the Krisses claim constitutes illegal retaliation for their lawsuit against Cellurale.

## II

The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1331 and we have jurisdiction over the Krisses' appeal under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of a motion to dismiss. *Grier v. Klem*, 591 F.3d 672, 676 (3d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Although we must accept the factual allegations in the complaint as true, we are not bound to accept "legal conclusions" or "mere conclusory statements." *Id.* at 678.

To state a First Amendment retaliation claim, the Krisses must allege facts sufficient to plausibly show three elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Although the Krisses have undisputedly established the first element, they have failed to allege sufficient facts to plausibly show the second and third elements.

## A

The Krisses have not adequately alleged retaliation by Fayette County or any of the

6

individual Defendants.[1]

The Krisses' only allegation against Defendants Vicites and Zapotosky is that they, "as Defendant Rosiek's boss . . . instructed [Rosiek] to engage in the aforementioned behavior [of ignoring the Krisses' complaints]." This allegation is not supported by any specific facts and resembles the allegations the Supreme Court dismissed in *Ashcroft v. Iqbal*. 556 U.S. 662. In that case, Iqbal sued Attorney General Ashcroft and FBI Director Mueller for abuse he suffered at the hands of FBI agents, INS agents, and prison officials. *Id.* at 666–67. Iqbal pleaded that Ashcroft and Mueller "knew of, condoned, and willfully and maliciously agreed to subject Iqbal to harsh conditions of confinement as a matter of policy," that Ashcroft "was the principal architect of this invidious policy," and that Mueller "was instrumental in adopting and executing it." *Id.* at 669, 680–81. The Supreme Court held that Iqbal's allegations against Ashcroft and Mueller were "bare assertions" not entitled to be assumed true. *Id.* at 680. Like Iqbal's allegations against Ashcroft and Mueller, the Krisses' allegation against Vicites and Zapotosky is that they

---

[1] Defendants claim that there was no retaliation because the Krisses were not actually deterred from doing anything and any action against the Krisses was *de minimis*. That the Krisses were not actually deterred from doing anything is irrelevant. In determining whether retaliation has occurred, we look to whether a person of ordinary firmness would have been deterred, not whether the particular plaintiff was deterred. *See Thomas*, 463 F.3d at 296; *see also Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 531 (D.N.J. 2008) ("The [Third Circuit] has never required that the plaintiff himself be deterred by the allegedly retaliatory action and it is an illogical requirement."). Moreover, because we find that the Krisses have not adequately alleged any retaliation by Defendants, we do not reach the question of whether any such retaliation was *de minimis*.

7

directed others to engage in unconstitutional behavior. Absent any specific supporting facts, the Krisses' allegation is insufficient for the same reasons the allegations were insufficient in *Iqbal*.

As for Rosiek, the Krisses claim that she "failed to perform her duty of forwarding complaints to zoning officers," "instructed her employees not to investigate any of the Krisses [*sic*] complaints," and "failed to communicate with the Krisses in an informative and professional manner regarding the complaints." The sole factual allegation supporting these conclusions was the incident in 2010 where Rosiek failed to forward the Krisses' complaint to a zoning officer even though it was her responsibility to do so. Such an allegation is insufficient since it provides no details about when or how the Krisses' complaints were lost or who actually lost them. In fact, the Krisses' complaint fails to allege that Rosiek took any action at all. Therefore, the Krisses have failed to adequately allege retaliation by Rosiek.

Finally, as for Fayette County, the Krisses assert that "the actions of [Vicites, Zapotosky, and Rosiek] constitute the official policy of Fayette County," and that Fayette County had a "fifteen (15) year custom" to favor the Cellurales, which led to "this

retaliation against the Krisses."[2] These assertions are legal conclusions that we cannot assume to be true. *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (finding that allegation that defendant city had "policy of ignoring First Amendment right[s]" was insufficient); *see also McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (finding that allegation that defendant city "has an unwritten custom, practice and policy to afford lesser protection or none at all to victims of domestic violence" was a legal conclusion). The factual predicates for the Krisses' assertions are the two instances where zoning officers Pato and Martin failed to respond to obvious zoning violations by the Cellurales and the third instance where Rosiek failed to deliver a complaint to Martin. As discussed above, the allegation of Rosiek's failure to deliver a complaint is inadequate.

Likewise, the allegations against Pato and Martin are inadequate to show a policy or custom. In order to adequately plead a policy or custom, a plaintiff must plead "in some fashion that [the alleged wrongdoer] had final policy making authority." *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010). The Krisses' complaint does not allege that Pato or Martin had "final policy making authority." Moreover, such an

---

[2] As a municipality, Fayette County may not be held liable under § 1983 merely because it employed a tortfeasor. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, "[a] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal policy or custom that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). A municipality's

9

allegation would not have been plausible given that Pato and Martin were only zoning officers, who reported to Director of Zoning Rosiek, who in turn reported to County Commissioners Vicites and Zapotosky. Thus, neither Pato's nor Martin's actions were a "policy or custom" of Fayette County. Because Pato's and Martin's actions cannot be attributed to Fayette County and the allegations against Rosiek, Vicites, and Zapotosky are inadequately pleaded, there remain no facts to support the allegation that Fayette County retaliated against the Krisses. Therefore, the Krisses have not adequately alleged retaliation by Fayette County.

B

Even if Defendants' actions constituted retaliation, the Krisses have not adequately alleged that those actions were caused by the Krisses' protected activity. To show causation, the Krisses must allege: (1) "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action;" (2) "a pattern of antagonism coupled with timing;" or (3) other "evidence gleaned from the record as a whole." *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Here, the Krisses have not alleged an unusually suggestive temporal proximity. They filed their lawsuit against Cellurale on October 8, 2009. The first alleged retaliation occurred nine months later in July 2010, when Pato told Mr. Kriss that the Cellurales did

---

policy must be "made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694.

not need a permit because they were building an agricultural structure despite clear indications to the contrary. The Krisses cited, and we have found, no cases where a gap of more than even two months was found to be unusually suggestive. Rather, the nine-month gap in this case is within the timeframe that we have found not to be unusually suggestive. *See Estate of Smith v. Marasco*, 318 F.3d 497, 512–13 (3d Cir. 2003) (finding that retaliation beginning in July 1999 was not unusually suggestive when plaintiff had engaged in his protected activity between 1991 and 1998).

Nor can the Krisses show "a pattern of antagonism coupled with timing." To do so, they would need to show "actual antagonistic conduct or animus" in "the intervening period" between the protected activity and the retaliation. *See Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007). Here, the Krisses have alleged no such antagonistic conduct or animus. In fact, the Krisses allege no interactions of any kind with Defendants between the time they filed their suit in October 2009 and the time Pato rejected their first post-suit complaint against the Cellurales in July 2010. The Krisses do allege a series of antagonistic activities that occurred over "the course of more than fifteen (15) years," but insofar as these activities occurred before the October 2009 lawsuit, they are at odds with the notion that Defendants retaliated against them because they filed their lawsuit. *See id.* at 302.

Finally, the Krisses have not alleged any other facts that would show that Defendants' actions were the result of the lawsuit. In fact, the Krisses' complaint

11

suggests that the Fayette County zoning authorities had been ignoring their complaints long before their 2009 lawsuit. The Krisses allege that the Zoning Office refused to enforce the Court of Common Pleas's order against Joey Cellurale "despite constant prodding" in 1996. They allege that another cease and desist order went unenforced in 2000 "despite . . . numerous requests." They allege that the Zoning Office gave "repeated refusals to address the[ir] complaints" between 2002 and 2006. And they allege that the ZHB excluded them from hearings in 2007.

In sum, the Krisses have alleged that the Fayette County zoning authorities have ignored them and made biased decisions in favor of the Cellurales since at least 1996. While these incidents may show that Fayette County authorities harbored some general bias against the Krisses, they defeat the Krisses' claim that Rosiek ignored their complaint and Pato and Martin made biased decisions *because of* their lawsuit in 2009.

Finally, the Krisses have not even alleged that Pato, Martin, or Rosiek—the three people who actually took actions against the Krisses—were even aware of the lawsuit. The lack of such knowledge dooms the Krisses' claim. *See Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) ("[F]or protected conduct to be a substantial or motiv[at]ing factor in a decision, the decisionmakers must be aware of the protected conduct.").

### III

For the foregoing reasons, we will affirm the judgment of the District Court.

12