**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 13-1209

———

Commonwealth of Pennsylvania Department of Environmental Protection,

Appellant

v.

Beazer East, Inc; Boldan, Inc; Carnegie Mellon Univ; CBS Corp; Exxon Mobil Corp.

——————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:09-cv-01123)
Chief Magistrate Judge: Honorable Lisa P. Lenihan

———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 17, 2013

Before: JORDAN, VANASKIE, and VAN ANTWERPEN, *Circuit Judges*

(Filed: January 2, 2014)

———

OPINION OF THE COURT

———

VAN ANTWERPEN, *Circuit Judge*.

The Commonwealth of Pennsylvania Department of Environmental Protection

("DEP/Appellant") appeals from the orders of the United States District Court for the

Western District of Pennsylvania granting the motions to dismiss in favor of Beazer East,

Inc. ("Beazer"), Boldan, Inc. ("Boldan"), Carnegie Mellon University ("CMU"), CBS Corporation ("CBS"), and Exxon Mobil Corporation ("Exxon"). Appellant brought suit in federal court seeking reimbursement for cleanup costs under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675. Appellant had previously raised similar claims under the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. § 6020.101 *et seq.*, in state court.[1] For reasons which follow, we affirm the decision of the District Court, granting the motions to dismiss for failing to file within the requisite time period prescribed under CERCLA's statute of limitations.

## I.

The site in question ("Site") is a 118 acre former landfill located in Penn Township, Westmoreland County, Pennsylvania. The Site was formerly a strip mine and operated as a landfill for industrial and municipal waste, buried in pits on the property.[2] Beginning in 1988, the Pennsylvania DEP was aware of a release or threatened release of hazardous substances at the Site, and by 1999 completed investigative assessments and

---

[1] The Pennsylvania Court of Common Pleas, Westmoreland County dismissed a prior state law action under the HSCA, citing DEP for failing to "first institute or initiate an administrative or judicial enforcement action against a responsible owner or operator on the site." *DEP v. Beazer, East, Inc.*, No. 08-7022 (Westmoreland County, Pa. May 6, 2009). Viacom, Inc., a party in the state court action, was replaced by CBS Corporation.

[2] The Site was originally under the control of William Bolen as an unpermitted landfill between 1958 and 1962 and sold to Boldan, Inc., which owned and continued to operate it until 1970 when it was denied a permit by the Commonwealth due to excessive leaching concerns. The Site has two small tributaries of the Brush Creek that run through it and is now used for recreational hiking and hunting. It is surrounded by residential developments and access is largely unrestricted.

reports.[3] From December 2001 until September 2002 DEP conducted several sampling events and excavated test pits, exposing 17 drums containing paint wastes, solvents, and acids that were removed and disposed of off site.[4]

Following the testing period, DEP sought to undertake an "interim response,"[5] to remove and dispose all hazardous materials from the Site and grade and backfill the land. Between June 2003 and January 2004 the interim response was completed, removing 7,835 drums and containers, 490.82 tons of waste, 3,500 tons of contaminated soil, 20 gas cylinders, and 60 tons of tires. Once removal was over, the land was restored and groundwater monitors placed during the investigatory period were dismantled and

---

[3] The report and subsequent publications noted an unknown quantity of industrial waste dumped, burned, or buried at the Site, most notably 55-gallon barrels that were in various states of disrepair.

[4] The actions undertaken during this period were done so in accordance with the HSCA, specifically Section 501, which states:

> Where there is a release or substantial threat of release of a contaminant which presents a substantial danger to the public health or safety or the environment or where there is a release or threat of a release of a hazardous substance, the department shall investigate and, if further response action is deemed appropriate, the department shall notify the owner, operator or any other responsible person . . . or may undertake any further investigation, interim response or remedial response relating to the contaminant or hazardous substance which the department deems necessary or appropriate to protect the public health, safety or welfare or the environment.

35 P.S. § 6020.501.

[5] The terminology used for these actions is at dispute amongst the parties. *See infra* Part IV. DEP claims its actions were "limited," yet designed and intended to be a final and permanent remedy. "An interim response may be taken before the development of an administrative record when, upon the basis of the information available to the department at the time of the interim response, there is a reasonable basis to believe that prompt action is required to protect the public health or safety or the environment." 35 P.S. § 6020.505.

3

abandoned. The cost to DEP for this removal was $3.7 million, and DEP sought to recover this jointly and severally from the five Appellees in the District Court complaint that is now on appeal.

## II.

The claim against the present Appellees was filed, pursuant to CERCLA, 42 U.S.C. § 9706, in the United States District Court for the Western District of Pennsylvania on August 21, 2009. DEP filed an Amended Complaint on March 31, 2010, pursuant to an order of the Court. The action before the District Court was dismissed via motion as to CMU, CBS, and Exxon for a statute of limitations violation. DEP filed a Motion for Reconsideration or in the alternative a motion for Certification of Appeal, which was denied on September 28, 2011. On October 28, 2011, DEP dismissed all remaining claims against Beazer and Boldan under Federal Rule of Civil Procedure 41(a)(2), and the District Court closed the case.

DEP filed its first appeal with this Court, which was denied on April 24, 2012, the panel finding the voluntary dismissal on October 28, 2011 did not provide the finality necessary for appeal. On January 9, 2013, Beazer and Boldan, the two remaining parties in the case, moved to dismiss DEP's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). The Court granted the motion and this appeal followed.[6]

## III.

---

[6] DEP's notice of appeal encompassed both the November 3, 2010 and January 11, 2013 dismissals of each claim against the five parties named above.

The District Court had jurisdiction pursuant to section 113(b) of CERCLA, 42 U.S.C. § 9613(b),[7] and 28 U.S.C. § 1331.[8] This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291, 2106.

We exercise plenary review over a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Grier v. Klem,* 591 F.3d 672, 676 (3d Cir. 2010). The key inquiry in the matter is whether, accepting the factual allegations in the light most favorable to the Appellant, and drawing all reasonable inferences therefrom, the complaint "contain[ed] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009) (internal quotation marks omitted).

## IV.

The determination of whether a plausible claim for relief exists turns on whether the action undertaken by DEP on the Site was "removal"[9] or "remedial action,"[10] as the

---

[7] "Except as provided in subsections (a) and (h) of this section, the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount in controversy. Venue shall lie in any district in which the release or damages occurred . . . ." 42 U.S.C. § 9613(b).

[8] The parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in the case under 28 U.S.C. § 636(c)(1).

[9] The terms "remove" or "removal" means, in part:

> [T]he cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

42 U.S.C. § 9601(23).

[10] The terms "remedy" or "remedial action" means:

> [T]hose actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to . . . cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. . . . [T]he term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials.

42 U.S.C. § 9601(24).

statute of limitations period differs for each pursuant to 42 U.S.C. § 9613(g)(2)(A-B).[11]

Appellees' claim the action was a "removal" and since the DEP finished its clean up in January 2004, the complaint filed in August 2009 was beyond the three-year period for timely filing.[12] DEP argues that even though its actions were labeled as "interim"[13] they were in fact a permanent remedy and should qualify as "remedial" under CERCLA, thus invoking the six-year statute of limitations period. For a "remedial" action, the starting date for the statute of limitations would normally have been June of 2003. However, DEP entered into a tolling agreement with all five Appellees on March 6, 2009 agreeing, for the purposes of the statute of limitations under CERCLA, that the six month period from February 20, 2009 to August 20, 2009 would not be included in the calculations. This agreement had the effect of moving the filing date from June 2009 to December 2009. Accordingly, Appellants claim that their filing date of August 2009 was within the six year statute of limitations. For reasons outlined below, in reading the facts in the light

---

[11] The statute of limitations differs amongst the terms.

> An initial action for recovery of the costs referred to in section 9607 of this title must be commenced-
> (A) for a removal action, within 3 years after completion of the removal action . . . and
> (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action[.]

42 U.S.C. § 9613(g)(2)(A-B).

[12] In the alternative, Appellees state that regardless of how the actions are qualified, DEP failed to file in a timely manner in spite of the Tolling Agreement entered into between the parties.

[13] Pennsylvania's state statute, codified in congruence with CERCLA, uses slightly different terminology to separate the terms in question. Instead of "removal," actions undertaken along a similar vein are codified as "interim," and "remedial actions" are only defined as "[a]ny response which is not an interim response." 35 P.S. § 6020.103.

most favorable to the Appellant, we find DEP instituted a "removal" action and failed to timely file. Thus, the District Court acted properly in its order granting Appellees' motions to dismiss.

Courts and agencies have struggled to distinguish removal and remedial actions under § 9607(a) of the statute.[14] Environmental Protection Agency ("EPA") regulations describe a "removal" action as a subsection or precursor to "remedial action." 40 C.F.R. § 300.415(d) ("Removal actions shall, to the extent practicable, contribute to the efficient performance of any anticipated long-term remedial action with respect to the release concerned.").[15] Remedial action is defined as "those actions consistent with permanent remedy taken *instead of, or in addition to, removal action* in the event of a release or threatened release of a hazardous substance into the environment . . . ." *Id.* § 300.5 (emphasis added).

Decisions in the courts of this Circuit have furthered the regulatory definitions, postulating the general distinction is that removal actions are primarily those intended for short-term clean-up arrangements, while remedial actions effect long-term or permanent remedies. *See United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 259 n.10 (3d Cir.

[14] "CERCLA is not a paradigm of clarity or precision. . . . Problems of interpretation have arisen from the Act's use of inadequately defined terms, a difficulty particularly apparent in the response costs area." *Artesian Water Co. v. Gov't of New Castle Cnty.*, 851 F.2d 643, 648 (3d Cir. 1988).

[15] Examples cited in the regulations include "[e]xcavation, consolidation, or removal of highly contaminated soils from drainage or other areas—where such actions will reduce the spread of, or direct contact with, the contamination" and "[r]emoval of drums, barrels, tanks, or other bulk containers that contain or may contain hazardous substances or pollutants or contaminants—where it will reduce the likelihood of spillage; leakage; exposure to humans, animals, or food chain; or fire or explosion." 40 C.F.R. § 300.415(e)(6), (7).

1992) ("Typically, a 'removal' action is an action intended to remove the hazardous waste from the area, whereas a 'remedial' action involves a long-term effort to remedy the damaged environment.").[16]

Lower courts and Pennsylvania regulatory decisions have been more forthcoming about a difference between the terms, as have our sister Circuit. "A removal action is not converted into a remedial action just because it effects a permanent remedy." *Hatco Corp. v. W.R. Grace & Co. Conn.*, 849 F.Supp. 931, 962 (D.N.J. 1994); *see also General Elec. Co. v. Litton Indus. Automation Sys.,* 920 F.2d 1415, 1419 n.4 (8th Cir. 1990) (rejecting argument that "an excavation that totally and permanently cleans up a hazardous waste site never can be classified as a removal action."). Additionally, the Pennsylvania Environmental Hearing Board "interpret[s] the term 'interim response' to mean response actions taken prior to the development and execution of a remedial action." *Comm. of Penn. Dept. of Enviro. Prot. v. Crown Recycle & Recovery, Inc.*, 1998 E.H.B. 1204 (Pa. Env. Hrg. Bd. Nov. 4, 1998).

## V.

We exercise plenary review over the filings of the parties, including matters of public record and authentic documents. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). We believe the District Court properly

---

[16] The Supreme Court has attempted to define the terms, stating, "[g]overnmental response consists of 'removal,' or short-term cleanup, § 9601(23), and 'remedial action,' or measures to achieve a 'permanent remedy' to a particular hazardous waste problem, § 9601(24)." *Exxon Corp. v. Hunt*, 475 U.S. 355, 360, 363 (1986).

granted the motions to dismiss because the actions undertaken by Appellant were a "removal," and thus, the statute of limitations period was exceeded.[17]

Even when taken in the light most favorable to the Appellant, the Amended Complaint fails to justify the conclusion that the disposal on the Site was "remedial" and thus subject to a longer statute of limitations period. In its early public bulletins (attached as documents before this Court), DEP initially categorized its cleanup actions as an "interim" response. Later, DEP adjusted its terminology, calling it a "limited interim response," claiming it was akin to a "remedial" response under CERCLA. Yet, DEP offers no evidence as to where the term "limited" is defined nor effectively articulates what about the actions undertaken made them "remedial" as opposed to "removal." Next, although it claims that costs ran beyond the $2 million cap for state "interim" (aka "removal") responses, DEP's plan said the work would "cost less than $2 million and take less than 1 year," and thus the final price was only a cost overrun as opposed to remedial action.[18] (Joint Appendix at 182.) Furthermore, DEP has filed papers adjoining its brief which contradict its present arguments. In its 2003 Statement of Decision, an agency document drafted by the DEP outlining the plan to be undertaken on the Site,

---

[17] Because the actions of DEP were "removal," the statute of limitations period is three years, commencing upon completion of the work. 42 U.S.C. § 9613(g)(2)(A). DEP finished and backfilled the land in June 2004 and thus a filing made in August 2009, even considering the Tolling Agreement, is not timely.

[18] The plan chosen as outlined in the Interim Response proposal called for removal and disposal of hazardous waste with a cost estimate of $1.8 million. This cost is within the statutorily prescribed standards of "interim" under the HSCA. *See* 35 P.S. § 6020.103. An interim response "may exceed [one year and $2 million] limitations [] where . . . (4) [c]ontinued response action is otherwise appropriate and consistent with future remedial response to be taken." 35 P.S. § 6020.103.

DEP stated there was "an immediate threat of a release of hazardous substances . . . that presents a substantial danger to the public health, safety, and the environment." DEP continued, stating, "[t]he response is *not a final remedial response*[19] pursuant to Section 504 of the HSCA. . . . Additional response action may be needed to achieve a complete and final cleanup for the site." (*Id.* at 137.) (emphasis added). Despite these prior statements, DEP now argues "[m]ultiple paragraphs of DEP's Amended Complaint allege that DEP's response did not address an immediate or imminent release . . . determin[ing] that a response to address an immediate or imminent threat was not necessary." (Appellant's Brief at 39.)

In applying the various regulatory and statutory definitions to the actions of Appellant, what was undertaken was a "removal" action. The actions were a "cleanup or removal of released hazardous substances" more than a "permanent remedy." *See* 42 U.S.C. § 9601(23)-(24). In fact, DEP presumed in its prior Statement of Decision that "[a]dditional response action may be needed to achieve a complete and final cleanup for the site." (Joint Appendix at 188.) What was undertaken was intended to "remove the hazardous waste from the area," not "remedy the damaged environment." *United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 259 n.10 (3d Cir. 1992).[20]

---

[19] "Final remedial responses under this act shall meet all standards, requirements, criteria or limitations which are legally applicable or relevant and appropriate under the circumstances presented by the release or threatened release of the hazardous substance or contaminant and shall be cost effective." 35 P.S. § 6020.504.

[20] "The Department determined that removal and disposal of the hazardous substances was the appropriate course of action." (Joint Appendix at 176.)

11

Appellant sought further discovery from the District Court to better define the term "limited" and provide greater factual justification for its actions being "remedial." Even drawing all reasonable inferences, our review of the amended complaint fails to find either a definition for the term "limited interim response" or viable justification of "remedial" action. Thus, we interpret the actions as "removal" and, therefore, Appellant failed to file a claim within the time requirements under the statute of limitations. Accordingly, the dismissal by the District Court was valid.

## VI.

For the foregoing reasons, the Order of the District Court granting Appellees' motions to dismiss is affirmed.